UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARCH SPECIALTY INSURANCE COMPANY, | ) ) ) | Case No.: 1:06 CV 704 |
| Plaintiff | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| J. G. MARTIN, INC. d/b/a MCDONALD'S, *et al.*, | ) ) ) | |
| Defendants | ) | ORDER |

Currently pending before the court are Plaintiff Arch Specialty Insurance Company's ("Arch" or "Plaintiff") Motion for Summary Judgment ("Arch's Motion" or "Plaintiff's Motion") (ECF No. 21) and Defendant J.G. Martin Inc. d/b/a McDonald's ("Martin" or "Defendant") Motion for Partial Summary Judgment ("Martin's Motion" or "Defendant's Motion") (ECF No. 22). For the reasons set forth below, Plaintiff's Motion is granted, and Defendant's Motion is denied.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Underlying Litigation

Martin is the owner/operator of three McDonald's restaurants in the City of Cleveland and its eastern suburbs. (Def.'s Mot. at 4.) On February 27, 2005, Robert White ("White"), an employee of Martin's McDonald's restaurant at 15500 Broadway in Maple Heights, suffered injuries at the hands of an unknown assailant while at work. (*Id.*) On March 31, 2005, White and Joyce

McPherson ("McPherson"), White's mother, filed a lawsuit against Martin and White's unknown assailant(s) in the Court of Common Pleas for Cuyahoga County, alleging that Martin either specifically desired to injure White or knew that the injury was substantially certain to occur. (Pl.'s Compl. 2, ECF No. 1.) Among the Complaint's allegations were:

> 1. Defendant J.G. Martin had express knowledge of the existence of a dangerous process, procedure, instrumentality, or condition at its 15500 Broadway restaurant, having express and/or constructive knowledge of threats of personal harm made by Defendant John Doe(s) and/or Jane Doe(s) against Plaintiff Robert White.
>
> 2. Defendant J.G. Martin had knowledge that if an employee such as Plaintiff Robert White was subjected by his employment to such dangerous process, procedure, instrumentality or condition, that harm to its employee Robert White would be a substantial certainty. Despite this knowledge Defendant J.G. Martin continued to proceed with such dangerous process, procedure, instrumentality, or condition.
>
> 3. Defendant J.G. Martin, under such circumstances and with such knowledge, did act to require the Plaintiff Robert White to continue to perform the dangerous task of working within the dangerous process, procedure, instrumentality, and/or condition.
>
> 4. Defendant J.G. Martin specifically desired to injure their employee, Robert White, or alternatively knew that the injury was substantially certain to result from Defendant J.G. Martin's act of requiring Robert White to work under such dangerous process, procedure, instrumentality, or condition.
>
> 5. On or about February 27, 2005[,] Defendant J.G. Martin through its supervisors, managers, employees and/or other personnel acted in an intentional, malicious, wanton, wilful, and/or reckless manner with indifference of the value of human life under the circumstances in which there was a great probability that substantial harm including severe injury would result.

(White and McPherson Compl. ¶¶ 9-11, 13-14, ECF No. 9-2.) White and McPherson also brought a loss of consortium claim, alleging that McPherson "[had] sustained financial loss as a result of the injuries to her son . . . and [had] suffered injuries including but not limited to emotional and mental

-2-

trauma and anguish, and loss of love, care, and companionship of her son Robert White." (*Id.* ¶ 24.)

On June 30, 2006, the Court of Common Pleas granted Martin's Motion in Limine to Exclude Evidence Pertaining to Loss of Consortium Claim on the ground that White was not a minor at the time of the altercation, thus barring the loss of consortium claim as a matter of law. (*See* CV-05-558872, Docket Entry for June 30, 2006.) On July 21, 2006, the jury assigned to the *White* case rendered a verdict in favor of Martin and against White and McPherson. (Def.'s Mem. Opp'n to Pl.'s Mot. Summ. J. ("Def.'s Opp'n") 1 n.1, ECF No. 25; Pl.'s Reply Supp. Mot. Summ. J. ("Pl.'s Reply") 4 n.3, ECF No. 32.)

### B. Insurance Policy

It is undisputed that Plaintiff Arch issued insurance Policy No. 12 GPP 05310 00 ("Policy"), effective October 1, 2004, to October 1, 2005, to Martin. (Pl.'s Compl. ¶ 7.) The Commercial General Liability ("CGL") section of the Policy provides, in pertinent part:

> **1. Insuring Agreement**
>    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . . .
>
>    . . . .
> **2. Exclusions**
>    This insurance does not apply to:
>    **a. Expected or Intended Injury**
>       "Bodily injury" or "property" damage expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.
>    . . . .
>    **e. Employer's Liability**
>       "Bodily injury" to:

-3-

> > (1) An 'employee' of the insured arising out of and in the course of:
> >    (a) Employment by the insured; or
> >    (b) Performing duties related to the conduct of the insured's business; or
> > (2) The spouse, child, parent, brother or sister of that 'employee' as a consequence of Paragraph (1) above.

(Pl.'s Ex. 1 ("Policy"), ECF No. 1-2, at 7-8.)

The Policy's "Stop Gap – Employer's Liability Coverage Endorsement – Ohio" ("Stop Gap") component explicitly "modifies insurance provided" by the CGL. (Policy at 34.) Notably, the Stop Gap allows coverage for specified types of bodily injuries to employees, whereas the CGL precludes all coverage for bodily injuries to employees. The Policy's Stop Gap provides, in pertinent part:

> **1. Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated by Ohio Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. . . .
>    . . . .
>    c. The damages we will pay, where recovery is permitted by law, include damages:
>       (1) For:
>          . . . .
>          (b) Care and loss of services; and
>          (c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee"; provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you . . . .
>       . . . .
> **2. Exclusions**
>    This insurance does not apply to:
>       **a. Intentional Injury**

> "Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

(Policy at 34-35.)

On March 19, 2005, Martin requested that Arch defend and indemnify the underlying litigation pursuant to the Policy. (Pl.'s Compl. ¶ 11.) On August 5, 2005, Arch issued a letter to Martin, refusing to defend or indemnify the underlying litigation, explaining that the Stop Gap's "Intentional Injury" exclusion ("Stop Gap's exclusion") precluded coverage.[1] (*Id.* ¶ 12.) Defendant responded by sending a letter to Arch on December 6, 2005, demanding that Arch "acknowledge its coverage obligations." (Def.'s Countercl. ¶ 4, ECF No. 9.) Plaintiff subsequently sent a letter stating that it would "respond as soon as possible," but that it could not meet Martin's requested deadline of December 16, 2005, because "[Arch's] clients are out for the holiday." (*Id.* ¶ 7.) Martin states that it did not hear from Arch again until Arch was ordered to attend a March 29, 2006, settlement conference for the underlying litigation, at which point Arch filed the instant litigation. (*Id.* ¶ 8.)

### C. The Instant Litigation

On March 28, 2006, Arch filed the instant lawsuit against Martin, White, and McPherson.[2]

---

[1] According to Defendant, Plaintiff initially consented to the request to defend, but subsequently changed its mind. (*See* Def.'s Countercl. ¶¶ 4-5.) Defendant has not submitted any evidence in support of this contention, and Plaintiff has nowhere stated that it initially acknowledged coverage.

[2] The parties stipulated to dismissal of White and McPherson, without prejudice, on April 20, 2007. (Order, ECF No. 42.)

Arch seeks declaratory judgment "that J.G. Martin is not entitled to coverage under the Policy for any claims arising out of the Assault and Battery, including but not limited to the White Litigation. [sic] because such claims are precluded by Exclusion (a)." (Pl.'s Compl. ¶ 17.)

On April 12, 2006, Martin filed a Counterclaim, seeking declaratory judgment that Arch is required to defend and indemnify Martin for the underlying litigation. (Def.'s Countercl. ¶ 15.) The Counterclaim also contains a count, alleging that Arch's denial of coverage for the *White* litigation constituted a breach of contract, in addition to a count alleging that Arch acted in bad faith in its conduct toward Martin with respect to the underlying litigation. (*Id.* ¶¶ 20, 23.)

On June 30, 2006, both parties moved for summary judgment. (ECF Nos. 21, 22.) Arch contends that no genuine issues of material fact exist with respect to Arch's contractual duties to Martin for the underlying litigation. (Pl.'s Mot. at 6.) Martin seeks summary judgment for its claims of declaratory judgment and breach of contract. (Def.'s Mot. at 16.) Because the court can determine the viability of the breach of contract claim only by determining whether Arch is required to defend and indemnify Martin, the court's findings concerning declaratory judgment will determine the disposition of the breach of contract claim. In addition, the court notes that Martin's bad faith claim will remain standing regardless of whether either party's motion is granted or denied because neither party moved for summary judgment with respect to that claim. Consequently, the court will not address the issue of bad faith in the within Order.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

> if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Federal Rule of Civil Procedure 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standard. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. LAW AND ANALYSIS

Except in limited circumstances, the law of the state chosen by the parties governs the parties' contractual rights. *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 209 (Ohio 2001). Here, the parties chose Ohio law, and there is no basis for the court to disregard that choice. Under Ohio law, the scope of the allegations of the underlying complaint determines whether the insurer has a duty to defend. *Millers Mut. Ins. Co. v. Plastivax, Inc.*, 681 N.E.2d 1363, 1365 (Ohio App. Ct. 1996). Where the insurer's duty to defend is not apparent from the pleadings of the underlying complaint, "but the allegations do state a claim which is potentially or arguably within the policy coverage or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984). Any ambiguities in insurance policy terms are to be "resolved in favor of the insured and against the insurer." *Thompson v. Preferred Risk Mut. Ins. Co.*, 513 N.E.2d 733, 736 (Ohio 1987). For an exclusion in an insurance policy to be given full effect, the

exclusion must be "clear and exact." *Lane v. Grange Mut. Cos.*, 543 N.E.2d 488, 490 (Ohio 1989). Furthermore, "that which is not *clearly excluded* from the operation of [an insurance] contract is included in the operation thereof." *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001).

### A. The Effect of the Stop Gap's Exclusion

In *Blankenship v. Cincinnati Milacron Chemicals, Inc.*, 433 N.E.2d 572 (Ohio 1982), the Ohio Supreme Court held that employers could be sued by employees for intentional torts. Ohio law recognizes both "direct intent" and "substantial certainty" intentional torts. *See Harasyn v. Normandy Metals, Inc.*, 551 N.E.2d 962, 964 (Ohio 1990). It is undisputed that, in the underlying suit, White pleaded that Martin had committed either one category of intentional tort or the other. In committing a "direct intent" intentional tort, "the actor does something which brings about the exact result desired." *Id.* Substantial certainty torts occur where "the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds . . . ." *Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108, 1112 (Ohio 1991). Under such circumstances, the employer is treated as if it intended the exact result.

Although the parties agree that the Stop Gap's exclusion precludes coverage for allegations of "direct intent" intentional torts, the parties dispute whether the exclusion applies to allegations of "substantial certainty" intentional torts. The Stop Gap's exclusion reads, in pertinent part:

> This insurance does not apply to:
>
> **2. Exclusions**
> **a. Intentional Injury**
> "Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed

>                    by you if it was reasonable to believe that an injury is
>                    substantially certain to occur.

(Policy at 34-35.)

An insurance policy, like any written contract, "is to be given a reasonable construction in order to ascertain the intent of the parties." *Sentry Life Ins. Co. v. Lustgarten*, 603 F. Supp. 509, 511 (S.D. Ohio 1984). In the instant case, the two parts of the Policy that pertain to exclusions for intentional torts are the CGL and the Stop Gap. As stated above, the CGL precludes coverage for any bodily injury or property damage that the insured expected or intended (Policy at 8), while the Stop Gap's exclusion precludes coverage for bodily injury that the insured intentionally caused, aggravated, or was committed where "it was reasonable to believe that an injury is substantially certain to occur." (*Id.* at 35.) Arch argues that the CGL's exclusion is enough by itself to preclude coverage. (*See* Pl.'s Reply at 4.) The court agrees with Martin that it is not. As Martin states, "employers purchase Stop Gap endorsements, and pay additional premium for them, precisely to secure coverage for claims asserted by their employees." (Def.'s Surreply Resp. to Pl.'s Reply Supp. Mot. for Summ. J. 2, ECF No. 34.) Where the terms of a CGL and the terms of a Stop Gap endorsement are in conflict, courts have held that the terms of the Stop Gap control. *See Harasyn*, 551 N.E.2d at 966; *Millers Mut. Ins. Co.*, 681 N.E.2d at 1367 ("The distinguishing factor that triggered the finding that coverage was available in *Harasyn* was evidence of the stop-gap endorsement, which effectively deleted the exclusions, and provided the coverage for which the employer had paid the extra premium"). Consequently, to determine the scope of coverage, the court must read the Stop Gap in conjunction with the CGL and, where the two sections conflict, the Stop Gap must be read to amend the CGL.

In the instant case, no conflict exists between the terms of the CGL and Stop Gap. Rather,

both the CGL and the Stop Gap manifest Arch's clear intent not to cover *any* allegations of intentional torts. In *Penn Traffic Co. v. AIU Ins. Co.*, 790 N.E.2d 1199 (Ohio 2003), the Supreme Court of Ohio, encountering a similar situation, interpreted the Stop Gap in conjunction with the CGL in ultimately finding that coverage for "substantial certainty" intentional torts was precluded.

In *Fyffe v. Jeno's, Inc*., the Ohio Supreme Court described the requirements for proving a substantial certainty intentional tort as follows:

> To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer *knows* that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk – something short of substantial certainty – is not intent.

570 N.E.2d 1108, 1112 (emphasis added and citations omitted). As discussed earlier, the language in the Stop Gap's exclusion indicates that the employer is not liable for an accident "resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur." Martin argues that because the exclusion does not mirror the legal standard which requires actual knowledge to a substantial certainty that an injury will occur, but instead precludes coverage unless "it was reasonable to believe that an injury is substantially certain to occur," the policy exclusion is inapplicable to the facts of this case. Martin argues that, because the Stop Gap's exclusion "misstates the employer intentional tort standard" by "replac[ing] the subjective test with an objective one," the Stop Gap's exclusion fails to apply to the

-11-

"substantial certainty" type of intentional tort provided by Ohio law and alleged by White. (Def.'s Opp'n at 2-6) (citation omitted and emphasis omitted.)

The court finds this argument is not well-taken. While it would be easier to determine the scope of the exclusion if its language had mirrored that of the legal standard, there is no requirement that the exclusion in the policy must be framed in the language of the legal standard. Here, a careful reading and analysis of the legal standard in light of the language of the exclusion reveals that the language of the policy is over-inclusive. That is, it would exclude coverage for a substantial certainty tort for which an employer might be liable under applicable law as well as coverage for suits for which the employer would not be liable. Clearly, if circumstances are such that an employer knows that injuries are substantially certain to result, it would be certainly reasonable to conclude that such injuries are substantially certain to result. Thus, the policy exclusion precludes coverage of substantial certainty torts against employers as explained in *Fyffe*. The exclusion, as it is written, would also cover torts under circumstances where it is reasonable to believe that injuries are substantially certain to occur, even if the employer does not know with substantial certainty that such injuries are likely to occur.

*Howard v. Columbus Products Co.*, 611 N.E.2d 480 (Ohio App. Ct. 1992) is not to the contrary. In that case, the court reversed the granting of a directed verdict after plaintiff's opening statement in a case where plaintiff sought recovery against his employer on the ground that the employer knew that injury was substantially certain to occur when he knowingly caused a plastic water meter to be installed in a sulphuric acid supply line. *Id.* at 481. In so doing, the court found that the lower court had erred in relying on *Calmes v. Goodyear Tire and Rubber*, 575 N.E.2d 416 (Ohio 1991), a case involving the application of the punitive damage standard, "great probability

-12-

of causing substantial harm," rather than the standard applicable to substantial certainty intentional torts. The *Howard* court further noted that the facts and circumstances of *Calmes* were also distinguishable from those in that case. The court also noted that the punitive damage standard was an objective one and that the substantial certainty standard was a subjective one, stating in regard to the latter that, "the objective probability of the accident is irrelevant, provided that the employer knows than an injury is substantially certain to occur." 611 N.E.2d at 483. The court in *Howard*, however, was not faced with determining an issue of an interpreting a provision regarding insurance coverage such as in the instant case and thus offers little guidance on the issue faced by this court. The fact that the standard is subjective does not mean that the nature of the evidence required to meet the subjective standard would not also be such as to support the conclusion that objectively an injury is substantially certain to occur. Indeed the high strict legal standard and nature of the proof required to hold an employer liable for an intentional tort under *Fyffe*, as distinguished from a tort based on negligence or recklessness, bolsters the conclusion that knowledge of the type required for recovery based on a substantial certainty tort would also support a finding that it was reasonable to believe that injury was substantially certain to occur. This is precisely the coverage excluded by the policy. Thus, substantial certainty torts are excluded.

### B. The Effect of McPherson's Loss of Consortium Claim

It is undisputed that the Stop Gap states that coverage shall be provided for "[c]are and loss of services." (Policy at 35.) However, the parties disagree about whether Martin is entitled to coverage for McPherson's loss of consortium claim. Arch argues that loss of consortium, as a derivative claim, does not warrant insurance coverage when coverage has been precluded for the injury from which loss of consortium flows. (*See* Pl.'s Opp'n Br. to Def.'s Mot. Partial Summ. J.

3, ECF No. 26.) Conversely, Martin argues that the White Plaintiffs' loss of consortium claim provides an independent basis for coverage for not only the claim itself but the entire litigation. (Def.'s Reply at 8.) Without regard to the fact that McPherson's loss of consortium claim was barred as a matter of law because White was a minor at the time of the altercation, the court finds that the Policy precludes coverage for McPherson's loss of consortium claim and, furthermore, that the claim does not provide an independent basis for coverage for the entire underlying litigation.

It is well-established that "a cause of action based upon a loss of consortium is a derivative action," meaning that it "is dependent upon the existence of a primary cause of action and can be maintained only so long as the primary action continues." *Messmore v. Monarch Mach. Tool Co.*, 463 N.E.2d 108, 110 (Ohio App. Ct. 1983). Because of the nature of a derivative action, "[i]t logically follows therefrom that a derivative action cannot afford greater relief than that relief which would be permitted under the primary cause of action." *Id.*; *see Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115 (Ohio 1996). While this case authority would thus seem to suggest unequivocally that loss of consortium cannot act as an independent basis for insurance coverage, other cases have reached different conclusions. The Ohio Court of Appeals has stated that "[w]hen an insurer has a duty to defend one claim asserted against its insured in a lawsuit, it must defend the entire lawsuit, even though other claims may not come within coverage of the policy." *OSI Sealants, Inc. v. Wausau Underwriters Ins. Co.*, No. 2003-L-181, 2005 WL 1208121, at *3 (Ohio App. Ct. May 20, 2005) (citing *Holloway Sportswear, Inc. v. Transportation Ins. Co.*, 177 F. Supp. 2d 764, 769 (S.D. Ohio 2001)); *see also Insurance Co. of State of Pennsylvania v. Vimas Painting Co., Inc.*, No. 4:06CV1048, 2007 WL 1412988, at *8 (N.D. Ohio May 10, 2007) (same). After acknowledging that the insurance policy at issue in *OSI Sealants, Inc.* precluded coverage for the appellee's

-14-

"substantial certainty" intentional tort allegation, the Ohio Court of Appeals declared that "if [appellee] has a duty to defend Mrs. Zappola's derivative claim for loss of consortium, it must defend the entire complaint." 2005 WL 1208121, at *3.

The court disagrees with *OSI Sealants, Inc.* that a derivative action can provide an independent basis for coverage for the entire litigation. *Holloway Sportswear, Inc.*, the authority upon which *OSI Sealants, Inc.* based its determination, appears to have misapplied *Preferred Mutual Ins. Co. v. Thompson*, 491 N.E.2d 688 (Ohio 1986). *Thompson* concluded, in pertinent part, merely that "[w]hen a complaint against an insured states both negligence and intentional tort claims that are based upon the same occurrence, the insurance company that is contractually obligated to defend the insured in negligence actions is required to make a defense as to both claims against the insured . . . ." *Id.* at 690. *Thompson* did not involve a loss of consortium claim, nor did the Ohio Supreme Court discuss any type of derivative claim. *Holloway* then suggested, without analysis, that *Thompson* could be extended to derivative claims. Because the court finds that *Thompson*'s holding does not apply to derivative causes of action, the court rejects *OSI Sealants* and *Holloway* in favor of the principle set forth in *Messmore* and *Gearing*.

In support of its argument that White's loss of consortium claim should be covered, Martin relies on case authority that suggests that loss of consortium provisions in Stop Gaps are part of what prevent Stop Gaps from being "illusory," *i.e.*, failing to provide any additional coverage beyond the original policy's terms. (*See* Def.'s Reply at 9); *see*, *e.g.*, *Lakota v. Westfield Ins. Co.*, 724 N.E.2d 815 (Ohio App. Ct. 1998); *State Auto Ins. Co. v. Golden*, 709 N.E.2d 529 (Ohio App. Ct. 1998). However, the court interprets *Lakota* and *Golden* more narrowly than Martin does, finding that those cases simply acknowledge that loss of consortium damages can be covered in situations where the

-15-

Stop Gap exceptions do not preclude coverage. *See Lakota*, 724 N.E.2d at 818; *Golden*, 709 N.E.2d at 532. Neither *Lakota* nor *Golden* addresses whether coverage can be given for derivative actions when the injuries from which they derive are not covered, as in the instant case. In fact, a recent case clarifies that coverage *cannot* be given to derivative actions under such circumstances. After acknowledging *Lakota* and *Golden*, the Ohio Court of Appeals found that

> [t]hese holdings, however, did not circumvent the unambiguous policy language that excluded coverage for bodily injury resulting from an act which was determined to have been committed by any insured with the belief that an injury was substantially certain to occur. Rather, the courts held that if the policy explicitly states that it excludes coverage for 'direct intent' and 'substantial certainty' intentional torts, *then there is no coverage for damages caused by an employer intentional tort*.

*Comcorp Technologies, Inc. v. Crum & Forster Ins.*, No. F-02-016, 2002 WL 31846263, at *3 (Ohio App. Ct. Dec. 20, 2002) (quotation and citation removed and emphasis added). The court disagrees with Martin that the court in *Comcorp* "appears simply to have misread the [*Comcorp*] policy's Stop Gap endorsement." (Def.'s Reply at 9.) Rather, the court finds that *Comcorp* correctly reinforces the idea that a derivative claim cannot be provided insurance coverage if the injury from which the derivative claim flows is not covered by the insurance policy. Therefore, the court finds that Martin is not entitled to any coverage related to McPherson's loss of consortium claim.

### IV. MARTIN'S BREACH OF CONTRACT CLAIM

Because the court has determined that Arch does not have a duty to defend and indemnify Martin for the *White* litigation, the court therefore finds that there was no breach of contract.

### V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 21) is granted, and Defendant's Motion for Partial Summary Judgment (ECF No. 22) is denied. Arch is

hereby granted declaratory judgment that it does not have a duty to defend and indemnify Martin for the underlying *White* litigation. The court further finds that, because Arch does not have a duty to defend and indemnify Martin, there was no breach of contract. Finally, as neither party moved for summary judgment with respect to Martin's bad faith claim, that claim remains.

The court will hold a telephonic conference with counsel for the parties in the within case on November 28, 2007, at 4:30 p.m., to discuss the remaining bad faith claim.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

November 15, 2007